*300 F. Supp. 1402*

# CORRECTED

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED
JUN 2 3 1969
PATRICIA D. WILL
CLERK



THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE MULTIDISTRICT COMMODITY ) 
CREDIT CORPORATION LITIGATION )     DOCKET NO. 22
INVOLVING GRAIN SHIPMENTS )

### OPINION AND ORDER

---

BEFORE ALFRED P. MURRAH, CHAIRMAN, AND JOHN MINOR WISDOM\*, EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH S. LORD, III, AND STANLEY A. WEIGEL, JUDGES OF THE PANEL

---

PER CURIAM

    The cases listed on the attached Schedule A were brought by the United States of America on behalf of the Commodity Credit Corporation to recover damages for alleged losses of grain[1]/ during shipment. Discrepancies between the weights recorded at the origin and the weights recorded at the destination form the basis for the Government claims. The grain was transported by the defendants in clear-record, covered hopper cars.[2]/

---

\* Although he was unable to be present at the Denver hearing, Judge Wisdom has, with the consent of the parties, participated in this decision.

1/ The majority of claims arise from shipments of wheat but shipments of corn and milo are also involved.

2/ A covered hopper car is defined as "an all-metal car so constructed so that commodities cannot escape from it during the course of transportation provided the car is locked and sealed by the shipper." The term clear record is used to mean "that the car was without any defect and that the seals were intact (at the destination)". *Union Pacific Response to Show Cause Order*, p. 1

- 2 -

On April 25, 1969, the Panel ordered the parties in these cases to show cause why the cases should not be transferred for coordinated or consolidated pretrial proceedings under 28 U.S.C. §1407.[3/]   A hearing was held in Denver, Colorado on May 23, 1969 and counsel for all parties were notified by the Clerk of the Panel.

These thirty-two cases involve many common questions of fact including those relating to general standards for loading and unloading hopper cars, general standards for weighing hopper cars, the integrity of the hopper cars by design and manufacture and the amount of shrinkage or loss of moisture which normally occurs in these grains.  There are also questions of fact of limited commonality.  As all shipments do not originate or terminate at the same point, the loading and weighing procedures used at any one terminal are not common to all cases.  However many of the shipments involved in this litigation have the same points of origin and destination; therefore the facts relating to actual practice at those locations are common to several of these cases.

We are satisfied, as are the vast majority of the parties[4/] that there are sufficient common questions of fact and that

_____

3/  This section authorizes transfer of cases for consolidated or coordinated pretrial proceedings on motion of a party or on the initiative of the Panel.

4/  The common palintiff and nineteen of the twenty-three res-ponding defendants favor coordinated or consolidated pretrial proceedings.

- 3 -

transfer of these cases for coordinated or consolidated pretrial proceedings will be for the convenience of the parties and their witnesses.[5]

There is a special reason why the just and efficient conduct of these actions will be served by application of Section 1407. Although these cases are of great importance to the railroads, the Government, and the general public, they involve relatively small damage claims.[6] Therefore, every effort should be made by the parties and the courts to process these actions as efficiently, expeditiously and economically as possible. The transfer of these cases for coordinated or consolidated pretrial proceedings under Section 1407 is but the *first step* in realizing such a goal. Section 1407 is not the exclusive vehicle for insuring the just and efficient conduct of cases having common questions of fact and law. *In re Falls City, Nebraska Cases,* _____ F.Supp. _____ (Jud. Pan. Mult. Lit. 1969). Sections 1404(a), and 1406(a) when applicable, may be used in conjunction with or in place of Section 1407 to transfer related cases to a single court. *In re Hendersonville, North Carolina Cases,* _____ F. Supp. _____ (Jud. Pan. Mult. Lit. 1969). It should be emphasized that the transfer of these cases under Section 1407 does not prevent the appropriate court from con-

---

[5]  This is said to be particularly true of discovery relating to Government records in Kansas City and Washington, D. C.
[6]  For example, the four cases pending in the District of Kansas involve claims for damages in the following amounts:
$546.64; $729.52; $809.13; and $4,692.51

- 4 -

sidering the possibility of transferring these cases for trial under Section 1404(a) when pretrial proceedings are complete. See *Manual for Complex and Multidistrict Litigation,* section 5.2.

In its initial response to the order to show cause, the Government suggested the District of Maryland as an appropriate transferee forum, a suggestion admittedly prompted by personal convenience.  The defendants oppose this suggestion and approximately half of them have requested that the cases be transferred to either the Districts of Colorado, Kansas or Nebraska. Selection of one of these courts is urged because most of the grain involved in this litigation moved in the central states and because the Government records relating to grain shipments are located at the office of the Agricultural Stabilization and Conservation Service in Kansas City.  These factors coupled with the availability in each of these districts of an experienced and capable judge familiar with this litigation and with grain handling and storage problems in general compel the selection of one of these three districts.  The final choice is not an easy one. The physical proximity of the District of Kansas to the offices of the Agricultural Stabilization and Conservation Service and the willingness of Judge George Templar to accept responsibility for the coordinated or consolidated pretrial proceedings[7]

---

[7]  Both the transferee judge and the transferee court, as evidenced by the consent signed by Chief Judge Arthur J. Stanley and filed with the Clerk of the Panel, have consented to the assignment of these cases to Judge Templar under Section 1407.

- 5 -

has convinced us that the District of Kansas is the most appropriate transferee forum.

The Southern Railway Company opposes the inclusion of the two cases filed against it in the District of South Carolina in consolidated or coordinated pretrial proceedings on the grounds that pretrial proceedings in these two cases are almost complete and the cases are nearly ready for trial. It does not appear that the convenience of parties and witnesses or the just and efficient conduct of these two actions would be furthered by transferring them to the District of Kansas under Section 1407. *Cf. In re Protection Device Cases*, 295 F. Supp. 39, 40 (Jud. Pan. Mult. Lit. 1968).

IT IS THEREFORE ORDERED that the cases on the attached Schedule A, with the exception of the two cases pending in the District of South Carolina and those cases originally filed in the District of Kansas, are hereby transferred to the District of Kansas and with the consent of that court assigned to the Honorable George C. Templar for coordinated or consolidated pretrial proceedings.


Attachment

SCHEDULE A

### DISTRICT OF KANSAS

1. United States of America v. The Atchison, Topeka
   and Santa Fe Railway Company
       Civil Action
   No. T-4314

2. United States of America v. Atchison, Topeka
   and Santa Fe Railway Company
       Civil Action
   No. T-4464

3. United States of America v. Chicago, Rock
   Island & Pacific Railroad Company
       Civil Action
   No. T-4323

4. United States of America v. Missouri Pacific
   Railroad Company
       Civil Action
   No. T-4317

### DISTRICT OF MARYLAND

5. United States of America v. Pennsylvania
   Railroad Company
       Civil Action
   No. 19013

6. United States of America v. Western Maryland
   Railway Company
       Civil Action
   No. 19575

7. United States of America v. Baltimore & Ohio
   Railroad Company
       Civil Action
   No. 19520

8. United States of America v. Pennsylvania
   New York Central Transportation Company
       Civil Action
   No. 19797

### EASTERN DISTRICT OF VIRGINIA

9. United States of America v. Chesapeake and
   Ohio Railway Company
       Civil Action
   No. 6541-N

10. United States of America v. Norfolk & Western
    Railway Company
        Civil Action
    No. 6404

11. United States of America v. Norfolk & Western
    Railway Company
        Civil Action
    No. 6895

- 2 -

### DISTRICT OF MINNESOTA

12. United States of America v. Chicago, Burlington
    & Quincy Railroad Company

    Civil Action
    No. 298

13. United States of America v. Chicago North
    Western Railway Company

    Civil Action
    No. 273

14. United States of America v. Chicago North
    Western Railway Company

    Civil Action
    No. 315

15. United States of America v. Chicago, Milwaukee,
    St. Paul & Pacific Railroad Company

    Civil Action
    No. 348

16. United States of America v. Soo Line Railroad
    Company

    Civil Action
    No. 297

### NORTHERN DISTRICT OF TEXAS

17. United States of America v. Fort Worth
    & Denver Railway Company

    Civil Action
    No. 1054

### WESTERN DISTRICT OF MISSOURI

18. United States of America v. Kansas City
    Southern Railway Company

    Civil Action
    No. 17018-3

### WESTERN DISTRICT OF WASHINGTON

19. United States of America v. Northern Pacific
    Railway Company

    Civil Action
    No. 3610

20. United States of America v. Spokane Portland
    & Seattle Railway Company

    Civil Action
    No. 8057

### WESTERN DISTRICT OF NEW YORK

21. United States of America v. New York Central
    Railroad Company

    Civil Action
    No. 1967-424

- 3 -

### EASTERN DISTRICT OF PENNSYLVANIA

22. United States of America v. Reading
    Company

    Civil Action
    No. 68-44

23. United States of America v. Reading
    Company

    Civil Action
    No. 68-1611

24. United States of America v. Pennsylvania
    New York Central Transportation Company

    Civil Action
    No. 69-203

### DISTRICT OF SOUTH CAROLINA

25. United States of America v. Southern
    Railway Company

    Civil Action
    No. 67-843

26. United States of America v. Southern
    Railway Company

    Civil Action
    No. 68-635

### DISTRICT OF NEBRASKA

27. United States of America v. Union Pacific
    Railroad Co.

    Civil Action
    No. 02839

### DISTRICT OF COLORADO

28. United States of America v. Union Pacific
    Railroad Company

    Civil Action
    No. C-1188

### DISTRICT OF OREGON

29. United States of America v. Southern Pacific
    Company

    Civil Action
    No. 68-23

30. United States of America v. Southern Pacific
    Company

    Civil Action
    No. 68-542

- 4 -

## WESTERN DISTRICT OF WISCONSIN

31  United States of America v. Great          Civil Action
    Northern Railway Company                 No. 67-C-160

32  United States of America v. Great          Civil Action
    Northern Railway Company                 No. 68-C-210

*304 F. Supp. 457* 

THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

SEP 30 1969

PATRICIA D. WILT,
CLERK

|  |  |
|---|---|
| IN RE MULTIDISTRICT COMMODITY CREDIT CORPORATION LITIGATION INVOLVING GRAIN SHIPMENTS | ) ) ) ) |
| *THE UNITED STATES OF AMERICA V. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY*, S.D. TEXAS, NO. 69-H-651 | ) ) ) ) |

DOCKET NO. 22

## OPINION AND ORDER

---

BEFORE ALFRED P. MURRAH, CHAIRMAN, AND JOHN MINOR WISDOM, EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, AND JOSEPH S. LORD, III, JUDGES OF THE PANEL

---

PER CURIAM

On June 23, 1969, the Panel transferred 26 *grain shipment cases* to the District of Kansas pursuant to 28 U.S.C. §1407 and assigned them to Judge George C. Templar for coordinated or consolidated pretrial proceedings with four similar actions initially filed in that court. *In re Grain Shipment Litigation,* ___ F. Supp.___ (Jud. Pan. Mult. Lit. 1969). Three other similar actions were later transferred without opposition to the District of Kansas and assigned to Judge Templar. The action was commenced after the initial Panel hearing held in Denver, Colorado on May 23, 1969 and it was therefore not included in the June 23rd transfer order.

On August 13, 1969, a *conditional transfer order* was entered transferring the above case from the Southern District of Texas

- 2 -

to the District of Kansas on the basis of the prior hearing
and for the reasons stated in the opinion and order of June 23,
1969.  During the automatic ten-day stay of execution of this
order, the defendant filed a motion to vacate the transfer order
and the stay of execution was continued until further order of
the Panel.  The Government then filed its opposition to the
defendant's motion and urged the transfer of this case to the
District of Kansas for coordinated or consolidated pretrial
proceedings with the other 33 cases.  The defendant waived its
right to a hearing before the Panel and none of the other parties
have requested one.

This action, like the others comprising this multi-
district litigation, involves claims for damages due to
alleged losses of grain shipped by one of the defendant rail-
roads at the direction of the Commodity Credit Corporation.
In the case at bar, the total sum in controversy is $365.30.
The defendant contends that because the claim for damages is
so small it "ought not to be required to incur the expense
associated with consolidated pretrial proceedings."[1]  All
of the cases involved in this litigation involve relatively
small damage claims and we suggested that "every effort
should be made by the parties and the courts to

---

[1]  Counsel predicts that expenses far in excess of the damage
claim will be incurred by the defendant if this case is trans-
ferred to Kansas but it appears likely to us that the expense
of defending this action will exceed the claimed damages *regard-
less* of where pretrial proceedings are conducted.

- 3 -

process these actions as efficiently, expeditiously and
economically as possible." ___F. Supp.___.  We held that
the transfer of these civil actions for coordinated or con-
solidated pretrial proceedings under section 1407 was *the first
step* in realizing such a goal and we are satisfied that Judge
Templar is conducting pretrial proceedings in a manner designed
to minimize the cost of this litigation.

     It may very well be that the transfer of this action to
the District of Kansas will, in the long run, reduce the defendant's
cost of defending it.  But even if this is not so, the Panel
must weigh the interests of *all* parties and must consider
multiple litigation *as a whole.  In re Childrens' Book Litigation,*
297 F. Supp. 385, 386 (Jud. Pan. Mult. Lit. 1968).  We are
confident that the transfer of this action to the District of
Kansas and the concomitant coordinated or consolidated pretrial
proceedings in these many actions will serve the overall con-
venience of the majority of the parties and will clearly promote
the just and efficient conduct of this litigation as a whole.

     We are also satisfied that there are sufficient common
questions of fact to justify the transfer of this action under
section 1407.  The grain involved in this action was shipped
to Houston or Galveston, Texas, the terminal point for many of
the shipments involved in the other actions comprising this multi-
district litigation.  Thus loading and weighing procedures and

- 4 -

scale accuracies at the points of origin and destination for the
shipments involved in this action are equally relevant to numerous
other previously transferred cases.  Questions of fact common to
*all cases* include "those relating to general standards for loading
and unloading hopper cars, general standards for weighing hopper
cars, the integrity of the hopper cars by design and manufacture
and the amount of shrinkage or loss of moisture which normally
occurs in these grains."  _____ F. Supp. at _____.

All statutory requisites for transfer of cases under
section 1407 having been met, the motion to vacate the order of
August 13, 1969 is denied.  The stay of that order is hereby
lifted and the Clerk of the Panel is directed to transmit it
forthwith to the Clerk of the District of Kansas for filing and
distribution pursuant to section 1407.

305 4. Supp. 73

# CORRECTED

THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

OCT 2 7 1969

PATRICIA D. WILL
CLERK

IN RE MULTIDISTRICT COMMODITY CREDIT )
CORPORATION LITIGATION INVOLVING )
GRAIN SHIPMENTS )
) DOCKET NO. 22
)
*UNITED STATES OF AMERICA V. UNION* )
*PACIFIC RAILROAD COMPANY*, NO. T-461 )



OPINION AND ORDER

---

BEFORE ALFRED P. MURRAH, CHAIRMAN, AND JOHN MINOR WISDOM,
EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH
S. LORD, III, AND STANLEY A. WEIGEL, JUDGES OF THE PANEL

---

PER CURIAM

Following a hearing in Denver, Colorado on May 23, 1969
the Panel found that the civil actions comprising this litigation
involved substantial common questions of fact and concluded
that their transfer to a single district for coordinated or
consolidated pretrial proceedings would be for the convenience
of parties and witnesses and would promote the just and efficient
conduct of these actions. On June 23, 1969 the Panel trans-
ferred twenty-six related actions[1]/ from the districts in which
they were filed to the District of Kansas and, with the consent
of the Chief Judge of that Court, assigned them to Judge George
Templar for coordinated or consolidated pretrial proceedings

---

1/    Two actions brought against the Southern Railway Company
in the District of South Carolina were not transferred as they
were nearly ready for trial.

*In re Grain Shipment Litigation,* 300 Fed. Supp. 1402. Four other related actions were already pending in the District of Kansas and were therefore not included in the transfer order.

The above-captioned action was originally filed in the District of Kansas and the defendant has filed a motion with the Panel to add this action "to those already included in Docket No. 22." We think it manifest that this action shares common questions of fact with the other actions included in this multidistrict litigation and have no doubt that it should be included in coordinated or consolidated pretrial proceedings being conducted by Judge Templar. Had this action been commenced outside of the District of Kansas, we would have undoubtedly used a *conditional transfer order*[2] to transfer it to the District of Kansas. We have not used *conditional transfer orders* to assign other cases commenced in *transferee courts* to the judge assigned by the Panel to conduct coordinated or con-solidated pretrial proceedings[3] and we are disinclined to

---

[2] A *conditional transfer order* is used to transfer actions commenced (or brought to the attention of the Panel) after the initial group of actions have been transferred for coordinated or consolidated pretrial proceedings. The new action is transferred to the previously designated transferee court on the basis of the prior hearing and for the reasons stated in the Panel's initial opinion and order. The *conditional transfer order* is stayed ten days to allow any party to file its opposi-tion to the proposed transfer. A hearing will be held if re-quested by any party. More than 150 *tag-along cases*, includ-ing five actions which are part of this litigation, have been transferred using this procedure.

[3] More than forty *tag-along cases* originally filed in trans-feree courts have been assigned to the Panel-designated judge by the transferee court itself.

- 3 -

do so here.  We think it unseemly for this Panel to inter-
fere with the internal affairs of any district court with
respect to assignment of actions filed in it before a motion
to transfer has been submitted to the district court in which
the affected actions are pending.  We have no doubt that the
transferee court, on proper application of a party or *sua
sponte*, will take whatever steps are necessary to insure that
this action is included in coordinated or consolidated pre-
trial proceedings being conducted by Judge Templar.[4/]

IT IS THEREFORE ORDERED that the instant motion is
hereby denied without prejudice to the right of any party
to request the transferee court to assign this action to
Judge Templar for inclusion in coordinated or consolidated
pretrial proceedings.

---

[4/]  See *Manual for Complex and Multidistrict Litigation*, §5.1,
Clark Boardman Edition, p. 81-83; 1 (Pt.2) *Moore's Federal
Practice*, p. 87-89; for discussion of assignment of related cases
pending in a single district.

*319 F SUPP 533*

THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

NOV 12 1970

PATRICIA D. HOWARD
CLERK OF THE PANEL

MULTIDISTRICT COMMODITY CREDIT   )
CORPORATION LITIGATION INVOLVING )
GRAIN SHIPMENTS                  )
                                 )          DOCKET NO. 22
*THE UNITED STATES OF AMERICA V.* )
*PENN CENTRAL TRANSPORTATION*    )
*COMPANY*, Maryland, C.A. 70-722-N)

OPINION AND ORDER
————————————

BEFORE ALFRED P. MURRAH, CHAIRMAN, AND JOHN MINOR WISDOM,
EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH
S. LORD, III, AND STANLEY A. WEIGEL, JUDGES OF THE PANEL
————————————

PER CURIAM

On June 23, 1969 following a hearing held on its own
initiative, the Panel transferred twenty-six related actions
to the District of Kansas and assigned them to Judge George
C. Templar for coordinated or consolidated pretrial proceedings
with four related actions originally filed in that court.
*In re Grain Cases*, 300 F. Supp. 1402 (J.P.M.L. 1969).  Since
then, nine *tag-along cases* filed in other districts have
been transferred to the District of Kansas, see, *e.g.*, *In re*
*Grain Cases*, 304 F. Supp. 457 (J.P.M.L. 1969), and at least
three other related actions have been filed in that
District.

When the complaint and docket sheet in the above-captioned
case came to the attention to the Clerk of the Panel, she

- 2 -

concluded that it was a "tag-along case"[1] and pursuant to Rule 12 of the Rules of Procedure of the Judicial Panel on Multi-district Litigation,[2] a Conditional Transfer Order was entered transferring it to the District of Kansas and assigning it to Judge Templar for coordinated or consolidated pretrial proce-edings under Section 1407.  During the ten-day stay[3] the Atchison, Topeka and Santa Fe Railroad Company (hereinafter Santa Fe), a defendant in several other actions included in the multidistrict litigation but not a party to this action, filed a Notice of Opposition to the transfer of this action.  The Condi-tional Transfer Order was stayed indefinitely and a hearing held in New York City on September 23, 1970 to consider the proposed transfer of this case.

[1]        Rule 1 of The Rules of Procedure of the Judicial Panel on Multidistrict Litigation defines a tag-along case as "a civil action apparently sharing common questions of fact with actions previously transferred under Section 1407...."

[2]    RULE 12

Conditional Transfer Order

   (a)  Upon learning of the pendency of a *tag-along* case the Clerk of the Panel shall as soon as practical enter a Conditional order transferring it to the previously designated transferee court on the basis of the prior hearing or hearings and for the reasons expressed in previous opinions and orders in the litiga-tion.  The effective date of this order shall be stayed ten days from the entry thereof to afford all parties the opportunity to oppose the transfer, unless the stay is further extended by the Panel.

[3]    At the time this Conditional Transfer Order was entered, Rule 12(a) provided for a ten-day stay.  This period was extended to fifteen days in the amended Rules adopted on August 21, 1970.

- 3 -

At the outset it should be pointed out that the "Con-
ditional Transfer Order" is an administrative device used to
expeditiously transfer apparently related cases where there
is no opposition to such a transfer.  It should not be considered
by counsel as a decision or judgment by the Panel which must be
reversed before such an order can be vacated.[4]  It is simply an
administrative act of the Clerk which can be and will be vacated
upon the showing of good cause by any party.  *In re IBM Anti-
trust Litigation*, __F. Supp. __ (J.P.M.L. August 13, 1970).

Although the Santa Fe is not a party to this action it
does have standing to attack this transfer.  *In re IBM Anti-
trust Litigation, supra.*  In addition to seeking the vacation
of the Conditional Transfer Order in the instant action, the
Santa Fe [5] seeks to remand to the court of origin: "All cases
which contain a substantial number of boxcar claims, whether
the same be tag-along cases or cases originally involved in the
transfer proceedings...."

The facts germane  to Santa Fe's motion are neither compli-
cated nor disputed.  It is agreed that this litigation *now* includes
claims resulting from shortages in grain shipped in *covered hopper
cars* and *boxcars*.  It is also true that the Panel was not aware
that claims arising from *boxcar shipments* were involved in any

_____

4/ See, *A Survey of Federal Multidistrict Litigation*, 15 Vill. L.
Rev. 916, 940-942 (1970).

5/  Two other defendants in other actions, the Kansas City Southern
Railway Company and the Missouri Kansas Texas Railway Company,
support the Santa Fe motion.

-4-

of the cases transferred under Section 1407.  However, the fact
that the *boxcar cases* were unwittingly included in this multi-
district litigation does not mean that they were improperly
included.

It is true that one of the central issues thought to be
common to all actions  was the integrity of the hopper car.
But the integrity of the hopper car was only one of several
common facts, "including those relating to general standards
for loading and unloading hopper cars, general standards for
weighing hopper cars, ... and the amount of shrinkage or loss
of moisture which normally occurs in these grains." *In re
Grain Cases*, 300 F. Supp. 1402, 1404 (J.P.M.L. 1969).  Questions
relating to the"shrinkage factor" remain common to all cases and
to the extent that the same equipment and procedures are used
for loading and weighing both *hopper cars* and *boxcars*, questions
relating to them are common to both types of cases.  Where
multidistrict litigation involves two or more categories of
cases with some overlapping questions of fact and some unique
questions of fact it has generally been thought desirable to
transfer them to a single district and to assign them to a
single judge.  The extent to which the two groups should be
consolidated *for pretrial purposes* is a question properly left
to the discretion of the transferee judge.  *Cf.  In re Revenue
Properties Litigation*, 309 F. Supp. 1002 (J.P.M.L. 1970) and
*Seeburg Commonwealth Litigation*, 312 F. Supp. 909 (J.P.M.L. 1970).

- 5 -

Since it is clear that there are some common questions of fact between the two classes of cases, the question becomes whether or not the inclusion of the *boxcar claims* would serve the convenience of the parties and their witnesses and would promote the just and efficient conduct of this entire litigation. We do not see how any party could be inconvenienced by the transfer of all *Boxcar Cases* to a single district for coordinated or consolidated pretrial proceedings, since they are *all* presently involved in related litigation in the same district. It is possible that some separate discovery will be necessary but it can be conducted in conjunction with the on-going discovery program in the *Hopper Car Cases* without causing any substantial delay in the processing of those cases. The claims in both types of cases are small and, as we suggested previously, the transfer of these cases to a single court is essential if these related actions are to be processed as efficiently, expeditiously, and economically as possible.

Santa Fe fears that the inclusion of the *Boxcar Cases* will make this litigation so bulky that proceedings will be slowed down even further. The extent to which this is true will depend in large part on whether the parties choose to expedite this litigation or to delay it.[6]  It goes without

---

[6]      We think the refusal of some defendants to stipulate to the admission of weight certificates and bills of lading as "records made in the regular course of business" is inconsistent with the goal of efficient pretrial proceedings. We are also distressed by what would appear to be unnecessary discovery skirmishes and other actions which serve to prolong this litigation and make it more expensive. See, *Manual for Complex and Multidistrict Litigation*, §1.10.

- 6 -

saying that the transferee judge has wide discretion in this matter.  He can, for example, proceed with that discovery which is common to *both* groups of cases and if additional *Boxcar Cases* begin to slow down pretrial proceedings they can be stayed pending completion of discovery in the original cases.

IT IS THEREFORE ORDERED that the motion to vacate the Conditional Transfer Order entered in the instant case and the motion to remand all actions involving boxcar claims are hereby denied.  The stay of said Conditional Transfer Order is hereby lifted and the Clerk is directed to transmit said order to the Clerk of the District of Kansas for filing and distribution pursuant to 28 U.S.C. §1407.

MAR 18 1971

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE MULTIDISTRICT COMMODITY CREDIT  )
CORPORATION LITIGATION INVOLVING   )
GRAIN SHIPMENTS          )
                )  DOCKET NO. 22
*United States of America v. Western*  )
*Pacific Railroad Company*, N.D.    )
California, Civil Action No. 70-2450 GSL )

OPINION AND ORDER

---

BEFORE ALFRED P. MURRAH, CHAIRMAN, AND JOHN MINOR WISDOM,
EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH
S. LORD, III, AND STANLEY A. WEIGEL, JUDGES OF THE PANEL

---

PER CURIAM

  This *tag-along case* was the subject of a "conditional

transfer order" entered on December 14, 1970, transferring it

to the District of Kansas for coordinated or consolidated pre-

trial proceedings with the other related actions transferred

to or originally filed in that court. This order has not be-

come effective because the defendant filed its notice of

opposition prior to the time the Clerk of the Panel was to

transmit the order to the Clerk of the transferee court for

filing as required by §1407(c).[1] This matter was then set for



---

[1] Rule 12 of the Rules of Procedure of the Judicial Panel on
Multidistrict Litigation give the parties 15 days to file their
notice of opposition to the transfer of any action which is the
subject of a conditional transfer order.

- 2 -

hearing at the next regularly scheduled session of the Panel which
was held in Washington, D.C. on February 26, 1971. Counsel for
the defendant was unable to attend the hearing and although
counsel for the Government did appear, the case was submitted
on the pleadings.2/

The defendant urges that this case should not be included
in these coordinated or consolidated pretrial proceedings
because it involves a different carrier, different points of
origin and destination, and a different type of grain than
are involved in the other cases. We have never said that *all*
of the factual issues involved in this litigation are common
to each and every case but have stressed that *many* of the
issues are common to all of these cases. *In re Grain Shipments,*
319 F. Supp. 533 (J.P.M.L. 1970)  One of the most important issues
in this litigation concerns the integrity of a "clear record cov-
ered hopper car" and the Government asserts that this case
involves losses of grain from covered hopper cars only.  In
addition, questions involving the general standards for loading,
unloading and weighing hopper cars are also common to this case.
*In re Grain Shipment,* 300 F. Supp. 1402 (J.P.M.L. 1969)

The presence of complex and important questions of fact
common to this case and to many of the cases previously trans-
ferred to or originally filed in the District of Kansas having

2/      Counsel for the Government did make a brief statement concern-
ing the general status of the cases now pending in the District of
Kansas and pointed out that his brief was no longer correct (due to
the settlement of certain other actions) in stating that the points
of origin and destination for these shipments were the same as those
involved in other cases.

- 3 -

been clearly established, we have no doubt that the overall convenience of the parties and their witnesses and the just and efficient conduct of this entire litigation will be served by a transfer of this case to the District of Kansas for coordinated or consolidated pretrial proceedings under Section 1407.

IT IS THEREFORE ORDERED that the motion to vacate the conditional transfer order be and the same is hereby denied. The Clerk of the Panel is directed to transmit said order forthwith to the Clerk of the United States District Court for the District of Kansas for filing and distribution pursuant to 28 U.S.C., §1407.

*325 F SUPP 318*

MAR 18 1971

PATRICK...
CLERK OF THE PANEL

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE MULTIDISTRICT COMMODITY CREDIT
CORPORATION LITIGATION INVOLVING
GRAIN SHIPMENTS

*UNITED STATES OF AMERICA V. SOUTHERN
RAILWAY COMPANY*, District of South Carolina,
Civil Action No. 67-843

)
)
)
)
)
)   DOCKET NO. 22
)

*UNITED STATES OF AMERICA V. SOUTHERN
RAILWAY COMPANY*, District of South Carolina,
Civil Action No. 68-635

)
)
)
)
)

OPINION AND ORDER

BEFORE ALFRED P. MURRAH, CHAIRMAN AND JOHN MINOR WISDOM,
EDWARD WEINFELD*, EDWIN A. ROBSON, WILLIAM H. BECKER, JOSEPH
S. LORD, III, AND STANLEY A. WEIGEL*, JUDGES OF THE PANEL

PER CURIAM

When the first of these actions was transferred to the
District of Kansas for coordinated or consolidated pretrial pro-
ceedings under 28 U.S.C. §1407, the two actions involving the
Southern Railway Company were not transferred because we had
been advised that discovery was virtually complete and that
these actions would be tried in the very near future[1]. *In re
Grain Shipments*, 300 F. Supp. 1402, 1405 (J.P.M.L. 1969).

---

\*      Although Judges Weinfeld and Weigel were not present at the
hearing they have, with the consent of all parties, participated
in this decision.

[1]      In its brief filed on May 14, 1969, Southern's counsel stated
that these two cases would "be ready for trial at the next term of
court." Almost two years have now passed without these cases having
been tried although the defendant continues to maintain that it is
ready for trial even if the government is not.

- 2 -

On  November 3, 1970, a pretrial conference was held in
the District of South Carolina in these two cases during which
the government moved for a continuance beyond the present term
of court to permit it to take additional discovery.
Southern opposed the continuance and the additional discovery.
In its order of November 13, 1970 the district court found that
the cases were not ready for trial and that there was consider-
able discovery remaining.

The government then filed a motion with the Panel  to
transfer these two cases to the District of Kansas for coordinated
or consolidated pretrial proceedings with the other cases trans-
ferred to that court under §1407.  The Southern opposed the trans-
fer and a hearing was held in Washington, D.C. on February 26,
1971 to consider this matter.

The sole reason for excluding these two cases from the
original transfer was the belief that there was little, if any,
discovery remaining and that no benefit would therefore accrue
to either party from coordinated or consolidated pretrial proceed-
ing.  Although the Southern maintains that it is ready for trial
and suggests that the government really has no further need for
discovery, the district court found that there was "con-
siderable discovery to be done."  We must therefore conclude that
the premise which underlay our original decision to exclude these
cases from the transfer to Kansas was factually incorrect.

- 3 -

The defendant now contends that there are few if any important questions of fact in these two cases common to those in actions transferred to Kansas. We do not fully understand the Southern's position with regard to its principal defense for it seems to contend that the weight certificates are "self impeaching" and *conclusively* show that there was no actual loss[2] of grain during shipment of the grain in question even though it intends to use expert witnesses to establish the integrity of the covered hopper car, and to point out possible defects in the design and use of its closing and sealing mechanisms (and other factors) which *could* have caused the discrepancy in origin and destination weight certificates.[3] Many of these "factors" have previously been found to be common to all of the cases. *In re Grain Shipments, supra;* see also 319 F. Supp. 533 (J.P.M.L. 1970) and 304 F. Supp. 457 (J.P.M.L. 1969). In addition,

---

[2]   For example, the defendant points out in its brief, that the records for one car which made nine consecutive trips showed an apparent loss of grain on six of the trips and an apparent gain of weight on the other three, with an apparent *net gain* of 1,320 pounds of grain for the nine trips.

[3]   Defendants' expert witnesses will describe to the court at least eleven factors that can cause a discrepancy between the weight certificate at origin and the weight certificate at destination:   (1) malfunction of scale at origin; (2) error by weighmaster at origin; (3) dust and chaff blowing away during loading; (4) spillage during loading; (5) failure to put all of the grain into the right car; (6) loss of moisture and "natural" weight loss during loading, enroute, and during unloading; (7) failure to completely unload car at destination; (8) spillage during unloading; (9) dust and chaff blowing away during unloading; (10) malfunction of scale at destination, and (11) error by weighmaster at destination." Southern's Brief in Opposition to Motion to Transfer, page 13 (December 22, 1970)

- 4 -

we must give great weight to the district court's finding
"that the considerable discovery remaining to be done in (these
two cases) is the same in many instances as the discovery in
the Multidistrict cases." (Order of November 13, 1970)

We are satisfied from the facts *now* presented to us
that these two cases are not ready for trial, that they involve
many complex questions of fact common to those in actions pre-
viously transferred to the District of Kansas, that substantial
discovery as to these common questions of fact remains to be
done and that the convenience of parties and witnesses and the
just and efficient conduct of this litigation will be served
by the transfer of these cases to the District of Kansas for
coordinated or consolidated pretrial proceedings under §1407.

We note that the question of the *integrity* of a clear
record hopper car -- that is whether one *can* lose grain during
shipment is still unresolved. We understood that this was a
"threshold question" which could conceivably dispose of the
entire litigation. If this matter cannot properly be resolved by
partial summary judgment under Rule 56 then it certainly can be
the subject of a separate trial under Rule 42(b)[4]/. Counsel for

---

4/    A separate trial could be held on this issue in one or more
of the actions originally commenced in the District of Kansas and,
by stipulation, the result of that trial could be made binding on
the parties in the other cases. Such a procedure has been used with
great success in the *Butterfield Patent Cases*. In an effort to
resolve this question, it might be appropriate for the court to
consider appointing its own expert witness. Manual for Complex
and Multidistrict Litigation, §3.51 (Part 2).

- 5 -

the defendant advises us that he has been informed that deposition program in these cases could cost between $200,000 and $500,000, a sum far in excess of the damages in these cases. We can only reemphasize that "every effort should be made by the parties and the courts to process these actions as efficiently, expeditiously and economically as possible." *In re Grain Shipments supra* at 1404.

IT IS THEREFORE ORDERED that the above actions be and the same are hereby transferred to the District of Kansas for co-ordinated or consolidated pretrial proceedings and with the prior consent of that court they are hereby assigned to the Honorable George C. Templer.

THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

APR 13 1971

PATRICK E. HOWARD
CLERK OF THE PANEL

In re Multidistrict Commodity Credit Corporation )
Litigation Involving Grain Shipments )
)
*United States v. Norfolk Southern Railway Co.,* ) DOCKET NO. 22
E.D. Virginia, Civil Action No. 860-70-N )
)
*United States v. Norfolk & Western Railway Co.,* )
E.D. Virginia, Civil Action No. 68-71-N )

OPINION AND ORDER

BEFORE ALFRED P. MURRAH, CHAIRMAN, AND JOHN MINOR WISDOM,
EDWARD WEINFELD, WILLIAM H. BECKER, JOSEPH S. LORD, III,
AND STANLEY A. WEIGEL, JUDGES OF THE PANEL

PER CURIAM

These two cases were filed by the United States to recover
for alleged losses of grain of the Commodity Credit Corporation
occurring during shipment on the defendant lines.  Because of
their apparent relation to grain shipment litigation now pending
in the District of Kansas, conditional transfer orders were
entered in both cases.  The two defendants now move to vacate
the conditional transfer orders and the United States opposes
their motions.  After a hearing attended by counsel for all
parties, we have concluded that these cases are appropriate
for coordinated or consolidated pretrial proceedings with the
previously-transferred cases and order them transferred to the
District of Kansas.

The defendants both argue that their cases raise few
questions of fact common to the Kansas cases.  The Norfolk &
Western says that its case involves a single point of origin



- 2 -

and a single point of destination for the majority of shipments.
It is asserted that the elevators involved in this case are not
involved in the other cases.  In addition, many of the relevant
weighings were made by use of track scales rather than hopper
scales, a procedure said to be different from that used in the
typical transferred case.

The Norfolk Southern stresses that the amount claimed is
only $548.00 and that no other suits are pending against it.
The majority of hopper cars relevant to this action are owned
by the defendant and both elevators and the relevant weighing
bureau are said to be in the defendant's own area, far from Kansas.

The United States persuasively argues against differentiating
these cases from the prior cases transferred.  As to the Norfolk
& Western, the United States points out that the carriers in
the consolidated cases are presently scheduling depositions at
many of the elevators and weighing agencies involved in this
suit and that failure to include this defendant in that
discovery program will lead to repetitive discovery and duplica-
tion of effort.  The United States also suggests that this
carrier refused, in actions previously transferred to Kansas
but since settled, to make admissions concerning the claims
documents on which the Government premises liability and that a
refusal to make those admissions in this case will necessitate
discovery at each elevator to supply the foundation for their
admissibility, thus duplicating discovery required in the conso-
lidated cases.  Finally, it is submitted that the use of track

- 3 -

scales is not unique to this suit but is involved in several
suits already consolidated.

As to the Norfolk Southern, the United States contends
that one of the two elevators and the weighing agency will be
the subject of depositions now being scheduled in Kansas.  In
addition, several of the cars involved in this suit are
involved in suits in Kansas, where their records will have to
be produced.  Finally, the Government suggests that the
defendant will not be at a disadvantage in participating in the
Kansas proceedings since it is represented by counsel who has
participated in them on behalf of other carriers.

Both defendants assert a more basic reason for opposing
transfer.  The Norfolk & Western states that it has concluded that
diverse railroads located across the nation cannot coordinate
their efforts in support of their defenses concerning
industry-wide practices and the fallibility of grain elevator
weight records.  Both defendants apparently feel that they have
a better chance of defending their claims if they are not sent
to Kansas and suggest that transfer would increase the nuisance
value of the suits and lead to possible settlements without a
conclusive determination of the central issues involved.

We cannot accept these arguments of the defendants.  As
the United States notes, these actions were filed pursuant to
a plan agreed on in the Kansas proceedings.  The United States
there agreed to file all outstanding claims against all carriers

- 4 -

arising from grain shipments in order to postpone the need
for filing and transfer of additional cases for at least the
two year statute of limitations period applicable to these actions.
The parties and the Court then set up a discovery schedule to
commence upon the completion of the transfer of all of these
cases.  If these two cases, which so clearly share the common
questions of fact with the Kansas cases, are not transferred
expeditiously, that schedule will be undermined and the effective-
ness of pretrial proceedings diminished.  As to the defendants'
dissatisfaction with the concept of coordinated or consolidated
pretrial proceedings in this litigation, the United States has
satisfied us that the convenience of the parties and witnesses
and the just and efficient conduct of the litigation require
section 1407 pretrial proceedings.  Duplication of discovery
efforts will inevitably result unless transfer is ordered.
And Judge Templar has become well acquainted with the facts and
issues in these cases and is expediting their pretrial processing.

IT IS THEREFORE ORDERED that motions of the defendants,
Norfolk & Western Railway Company and Norfolk Southern Railway
Company, to vacate the conditional transfer orders be and the
same are denied.  The stay of the conditional transfer orders
entered in these two actions is lifted and the Clerk is directed
to transmit those orders to the Clerk of the United States
District Court for the District of Kansas for filing and
distribution pursuant to 28 U.S.C. §1407.